Morning to the Honorable Justice of this Court. My name is Maurice Chenier. I represent Mr. Johnny Kassim. And I'm fairly unfamiliar as to how you would like to proceed. If I have the floor, that's fine. I can address certain things. And if you have questions of me, I'd be happy to answer them. Will you speak directly into the microphone? I apologize. You don't have to lean, but just speak up into the microphone, please. Yes, sir. Well, Your Honor, and to the entire panel, I think this case is akin to the denial of an opportunity. And I'd give a contemporary example that's kind of unrelated to the case, but it would pretty much shed light on what's going on here. In this case, my client never got an opportunity to present his evidence of the changed country conditions that would exempt him from the numerical limitations. The example would be there would be a pink elephant in the room. There's bombings going on. There's 494 bombings and explosions. That was the evidence that was going on at that time. My client presented that. Well, how do you respond to the government's argument that this evidence of general violence and not specifically with reference to your client? Well, two ways, Your Honor. One is that he was a member of a political party, which is undisputed, that was being persecuted. And I cited a case in the brief, I believe it's page 22 of my brief, where it's a pattern in practice against a group of people. And he's a member of that group. That was his hometown area. He was a member of the Tetiah political party. There's bombings going on. People are dying. Political persecution. There's a whole lot going on. And in that case, I think that case, there's no need for individualized showing. But he did have an individualized showing. However inartful it was, he had what would be tantamount to a deficient declaration. I'd say that it wasn't a declaration, but it was a statement from his client. I mean, from his witness, Tanveer, who states that, well, his house was tarnished. Now, I understand that may be, in our language, different from what they believe it to be. Tarnished in Bangladesh may mean something else in the United States. But the point is, the way I understand it, tarnished meant destruction, attacking. The letter you refer to, though, it sounds like a general criminal issue. In other words, I read the letter, and I think it's the appendix at 14, or the record at 14. What should I say? Your house has been tarnished. And at that place, they build a mechanic shop. Whoever take over your house now, they are desperately looking for you. It sounds like the fear to the degree we can interpret that is that someone has stolen his house, and that the person who has stolen his house would kill him, potentially, if he came back to reclaim the house. Well, my response to that is, we really won't know unless there's some analysis, or at least some discussion of it. Now, what we see when there was a ruling that doesn't even address the document. At least there could have been a statement that, look, this declaration is deficient. Now, I'm a trial. Can you support a claim or application under the convention against torture, based upon just criminal, general criminal conduct within a country? Well, there's a lot more than that, in my view. There was one, page 594 of the record. He was actually tortured. He had, he showed pictures of him with burning or stabbing wounds on his back. There was the, all the bombings that were going on simultaneously with this hearing. And then in addition, you have, coupled with that, the statement from Tanvir, which is inartfully drawn. I would concede that, but I think that at least raised the level, to a level of inquiry. Let's see what's going on. Maybe this warrants further looking into. Now, I would say that it doesn't, he may not ultimately be able to prove that he should stay here, but I think he should at least get the opportunity to put the evidence on, especially in light of the fact that his counsel was suspended from the practice of law, that was a, apparently she was disbarred. I wasn't aware of that, but it was clear evidence during the pendency of his proceeding, that his counsel was suspended, and the evidence that he put on, he could have done it better, it could have been a better presentation. And as a lay person, I think he was put at a disadvantage at that point. Now, in terms of the evidence, if I were ruling, I would say, well, look, at least it warrants it looking into. Yeah, this declaration doesn't meet the technical standards under California law or under the federal law, but let's call this witness in, let's question him, let's ask him, what do you mean by tarnish? What do you mean by this? He never got that opportunity, and that's all I'm saying. It's like if Michael Jordan was denied a second chance to try out for the basketball team, we never knew who the greatest player is. That's what happened in this case. He never got an opportunity to put it on. There was an issue of his credibility, was there not? Well, I would say, and I'll address that as well, initially, the, I.J. said, yeah, there was some, he thought his claims were incredible, but if you look at the State Department reports and the subsequent bombings right around the time of the new, of the third motion to reopen, that led credence to what he was talking about. This really is going on. There are people being, there's widespread torture, there's bombings going on. I never heard of 400 explosions in one place. I mean, even today, if we look at the news, you hear about a bomb, one bomb, but 450 bombs going off? I mean, that would raise at least an inference in my mind that something needs to be looked into, and that's to my. There's no question that the conditions are quite terrible. The question is whether your client has particularized the harm to him and to his family based upon one of the protective grounds, and he argued he didn't provide evidence regarding his activities as a security officer because he feared threats to his family. How is that enough to rehabilitate his credibility after the adverse credibility determination? Well, two things. He didn't have adequate counsel at the time, and his presentation was obviously impacted by that, and two, it, the That's not a claim before us of effective assistance of counsel. Well, in terms of rehabilitating his credibility, he didn't get an opportunity to do that. That's my whole point. I think that at the time, the BIA just summarily denied it and rubber stamped it without saying, okay, with all this stuff going on, and you claim Tanvir says you may be affected by it, or however inartfully he says it indirectly, I would admit that at that point, at least look into it and comment on it. Say, well, okay, I've reviewed your re-application under this cap, and I've reviewed it under asylum, and you don't meet the standards, so bye. Get out. That's what usually happens, but I don't understand why in this case it's just rubber stamped. I think he meant Asylum, though he's numerically barred, isn't he? I would disagree because he's presenting evidence of changed country conditions, and I listed it, I believe it's at pages, well, we've already acknowledged there was a lot of stuff going on, but even the United States government at that time, the State Department, said that there were deplorable conditions going on at the same time, so I would say that there were changed country circumstances, and because of the pattern and practice of human rights violations and people of his racial group that were being targeted under, I can't really pronounce it, but Maganian and Osorio cases that I cited at page 22 would address that. He doesn't need to show 100% that he will be the victim. Counsel, you have just about a minute left. Would you like to save it for rebuttal? Yes. All right. Thank you. Great. Counsel? Good morning, Your Honors. Anne Varnon for the Attorney General, Eric H. Holder Jr. Your Honors, the, Mr. Joni Kasim has had a full and fair hearing on asylum that was upheld by the court. He also had a first motion to reopen that the board considered and discussed the lack of rehabilitation of his credibility in his motion that he did not petition for a second motion to reopen that was also denied by the board as numerically barred. The court did again uphold that decision. May I ask a question? How do you respond to Petitioner's argument that the BIA's decision regarding his motion to reopen is so perfunctory that we can't determine whether the BIA considered his evidence of changed country conditions? How can we conclude that the BIA determined that Kasim's evidence was not material? Yes, Your Honor. The statutes and the regulations do not require any special articulation by the board. That has never been required. But in a case like this, the board's words were very carefully drawn. The board said that the exceptions to the numerical bar were not pertinent in this case. And I think that that was more than sufficient because of the evidence that was before the board. The petitioner offered the one affidavit or statement of Mr. Tanvir that has already been discussed in opening, and that was very vague as to what the problem was. He claims that it contained evidence that was particular to him, to his client, to Mr. Kasim, and that the BIA should have expressed its analysis with regard to this particular letter. What is your response? Well, I do agree that it was particular to him, but it did not indicate any evidence to suggest that he would be persecuted. It sounded very much more like a problem. Mr. Kasim has been in the United States now for a decade and a half. It's not unreasonable that someone would be looking for him after he left, particularly with property left behind. I think Judge Nelson's question, though, was shouldn't the hearing officer have given at least some more discussion about the, you know, either this declaration or affidavit or whatever it wants to be called, so that we have some impression that the hearing officer actually looked at it? Well, I think they have indicated certainly that they did look at it by saying that the exceptions to the number bar on a motion to reopen were not called or triggered by this amount of evidence, which the evidence was largely... Counsel? Oh, yes. Judge Gould, with a question for you. Certainly. If I recall correctly, they said that the motion was number barred and that there were certain exceptions that weren't pertinent in this case. So my question is, do we have any Ninth Circuit precedent about whether such a succinct or bald statement just saying the exceptions aren't pertinent either is enough or is not enough? Your Honor, I would have to check on that as to whether there is Ninth Circuit precedent. I know that this language is commonly used by the Board in cases such as this, where you have a person coming in with evidence of widespread bombing, say, on one particular day without any indication that that would materially affect his asylum case. And the Board, as far as I know, there is no statute or regulation as to what the Board is required to say or requiring the Board to say certain specific words. The situation here, the exceptions to the number bar would be based on changed country conditions that would materially affect the Petitioner's asylum claim. And the Board is indicating that those situations, such a situation as that, that would materially affect Mr. Joni's asylum claim, was not present. And that was sufficient, then, to indicate that the number bar would be triggered. Certainly the statute only allows one motion to reopen. Mr. Joni has had three, has brought three motions to reopen, the second of which was denied and the Board's decision was upheld by the Court. The one affidavit from this person having nothing essentially to do with something that would materially affect the asylum claim. The asylum claim in this case, as I understand the Petitioner's presentation of it, is that he was persecuted because he was a member of the Jaja party, the Jaja party. I'm not sure if I'm pronouncing that correctly, but that party is lawful in Bangladesh. And that his party at one time asked him to assassinate the Prime Minister of the Bangladesh National Party, the ruling party, and he refused. That is my understanding of the asylum claim, that this Court has already upheld the Board's dismissal of that claim based on the adverse credibility finding. Here again, you have a motion to reopen. First, where the Petitioner again does not try to rehabilitate his asylum claim. Just saying that because something is in the newspaper, it is true, and certainly it was true, that there were widespread bombings in the jails, in the courthouse, in the countryside, everywhere in Bangladesh on a particular day. But that would not materially affect Mr. Kassim's asylum claim, nor would the affidavit. Let me shift you just back again. I pulled up the Watkins case. Are you familiar with that? No. But it's a Ninth Circuit case that held the BIA abuses its discretion when it fails to state its reasons and show proper consideration of all the factors when weighing equity and denying relief. And it follows another case where the Ninth Circuit has said that those Board opinions that lack an adequate statement of the BIA's reasons for denying the Petitioner's relief must be remanded. I'm just wondering, under this Ninth Circuit authority, is it appropriate for them to just, not even in a very cursory fashion, deal with the argument under the Convention Against Torture? It sounds like your argument is that just by denying it, they necessarily were giving a reason for turning down this Convention Against Torture application. Well, they did say that the exceptions were not pertinent. And, yes, I would say that that is under the evidence that was presented in this particular case, which I will, I know that the Board, that sometimes there have been cases that have been remanded for lack of more artful words in the denial. But the Board is required to consider the evidence, to show that the evidence was considered, and then to make their decision. And as far as I know, that is the requirement. The question is, how did it show that the evidence was considered when it made no reference to that letter? Well, no, it did not make a specific reference to the letter. Often the Board is given with motions to reopen. I've seen cases where they're given numerous, like in this case, I believe, there were about 20 pieces of evidence. Well, thank you, Counsel. I understand your response, and your time is up. Thank you. Thank you. We have a minute to rebut. Thank you. I'll just be brief. I would cite to court, in response to the standard page 5 of my brief, there's a case I cited at 251 F. 3rd, 1284. It talks about just rubber stamping. What case are you referring to? Kalmathas. The names are kind of funny. I can't really pronounce them. K-A-M-A-L-T-H-A-S. 251 F. 3rd at 1284. And it's in my reply, page 5 of my reply. And it goes on a few pages. Counsel, we've got the cases, but let me ask this. Could you just please, again, in your own words, in terms of your argument, explain the significance of the initial adverse credibility determination, which so far has been upheld, and I think isn't really challenged, as I understood it, and the motion to reopen. How does that relate to a number bar or motion saying there's changed country conditions? Well, I'd say the two are mutually exclusive. In other words, even if he was the most dishonest person in the world, if there's evidence of changed country conditions, that would still,  And what I say to that is I think that the subsequent events, if the same judge were ruling on it later, and if he saw all the bombings, all the deplorable conditions, and all the conditions that were going on, that he wouldn't have believed it to be so impossible or so, I forgot what he said. He said it was like incredible. Well, yeah, it is incredible. And ultimately, what he was saying came to fruition in this huge melee that was going on. And it was a political melee. And there's also evidence that the government sanctioned and was involved in this, and that would also alleviate that responsibility. So the credibility, I think, was rehabilitated by the very fact of the conditions that were occurring. At least he would have raised an inference to look at it and address it and say, you know, one, two, three. One, it doesn't apply to you. You haven't shown enough individualized, you haven't shown that it's particular to you. You haven't shown that you will be harmed, whatever. But it was just rubber stamped. He never got the opportunity. And I think Tanvir's statement is important because even though it's inartfully drawn, I think that at least it would give him an opportunity to either address it or bring the guy in and let him give his statement. Thank you. Thanks. You've answered my questions. I appreciate it. Thank you, counsel.  The case is submitted. Thank you for your time. Thank you, Your Honor. We move next to the case of Baretto v. Curry. Excuse me, Judge Gould? You're... Oh, sorry. No, I was trying to get something from my secretary. All right. I'm sorry. I was on... All right. Thank you. Please proceed, counsel.
judges: Gwin, Nelson D. W., Gould